This was my first appearance and it was great. Thank you. We'll hear argument next in Appeal 1434 from 2008, Every Penny Counts v. American Express. And we also call forward the Council in the related but separate appeal of Every Penny Counts v. First Data at All, Appeal 1438 from 2008. And the panel has determined to proceed in the following fashion. Appellant's counsel in each of these two cases will have ten minutes for argument to cover both cases and five minutes thereafter of rebuttal. In between his opening argument and rebuttal argument, we'll hear serially from Mr. Arminio and one of the other counsel, and then rebuttal by Appellant's counsel. Any questions about the batting order? All right, very good. Thank you, gentlemen. Welcome to the court. Please proceed. Sure. If it pleases the court, my name is Harvey S. Corgett, and I represent the appellant, Every Penny Counts. I ask to reserve the five minutes for rebuttal that we just discussed. And I request this court to reverse the judgments of the trial court and remand for the reasons set forth in our briefs. Today I will address the key points in support of our position. We'll rely on our briefs for the other arguments. The issues presented in these appeals are straightforward and not complex. Simply stated, the claim terms at issue were not construed under governing case authority. Thus, we believe that the judgments should be reversed for the following reason. The disputed claim terms that were decided by the district court were similar in each of the patents in suit. Specifically, the claim terms were as follows. In U.S. Patent 5621640, the term was an excess cash payment. In U.S. Patent 6088682, the term was amount of excess cash in Claim 1 and an excess from amounts in the transaction in Claim 30. In U.S. Patent 6876971, the term was any excess in Claim 1 and an excess from amounts in the transaction in Claim 20. In U.S. Patent 7171370, the term was amount of excess cash. And in U.S. Patent 6112191, the term was an additional amount. Thus, there was basically a common claim term in dispute as to its scope. Specifically, the issue before the district court was the scope of the disputed claim term as it relates to what the amount of excess or additional amount is being compared with to understand what was the excess. In other words, what is the baseline for the comparison so that one can determine the excess? Based on a proper reading of the specification of the patents in suit, the baseline is clearly price. However, the defendants misled the district court into construing the word price as used in the specification. Notably, the word price was not a claim term in any of the patents in suit. The word price was not used in the specification in any unique way that required further construction. There was no file history where the word price was limited in some fashion since it was never part of any of the claims at issue. The word price has a plain meaning that one skilled in the art would use a dictionary to define. The scope of the word price was not in dispute. Thus, we respectfully disagree with the district court's decision to construe the word price as used in the specification. The most relevant case that present appeals as all parties to the present action asserted is O2 Micro International Limited versus Beyond Innovation Technology. We believe that O2 Micro requires the district court to construe a claim term when there is a fundamental dispute regarding the scope of the claim term. In the present appeals, the scope of the term amount of excess cash and additional amount were at issue for the district court during the Markman proceeding. As I stated, the scope of the terms amount of excess cash and additional amount is decided by providing a baseline to which a comparison can be made. In the patents in suit, the baseline is clearly the price as provided by the specification. The defendants asserted that the word price allegedly needed further construction due to the way in which the accused device operates. However, there is no authority that supports the position that the way in which accused device operates needs to be construed at a Markman hearing. As held in Biotech versus BioCorp, no construction is required if the disputed issue is the proper application of a claim term to an accused process rather than the scope of the term. Let me stop you because you've already lost me. You seem to be arguing that the methodology commanded by O2 Micro was not followed here. I don't see how it was not followed here. What was at issue was what was the dispute was over the scope of excess or additional amount. That claim term. Yes. Not. What is it that O2 Micro required that this district judge didn't do? He then went an extra step and went because you've determined that excess was in relation to price. That was the scope. What is the excess in relation to? Well, how does that violate the holding of O2 Micro? No, that was fine. And then he took the extra. I thought your argument was he violated the command of O2 Micro. In construing the word price because the defendants said the word price was that the scope of the word price needed further construction and that's when he violated it. It seems kind of odd. It struck me the same way to say that's an O2 Micro problem. The problem with O2 Micro is not enough construction. Your argument here is there was too much construction. Yes, Your Honor. In effect invading the province of the jury as I understand your argument. Correct, Your Honor. Then the second case that you seem to want to rely on had to do with the application of the construction to the accused product or process. But I thought here there was a stipulation as to infringement and therefore we don't need to worry about the application of the construction to the accused. We only have to worry about the correctness of the construction. I didn't understand the relevance of the second case on which you rely either. We stipulated to infringement because of the construction that was made by the district court because he had gone too far. Right, so either the construction is right or it's wrong and that we need to decide. But I don't see how there's any problem of methodology. We felt the construction went too far. He over construed. The district court kept going and construed a word because of what the defendants represented. Remind me of the second case you cited, Biotech. It's Biotech versus Bio Corp? Yeah. What holding in Biotech was violated by what you're calling over construction by the district judge here? Well because the defendants were trying to, they kept pushing the district court judge on how their accused system operates. And so the judge then, in relying on that, construed the word price when there was no construction necessary. Over construed because he was dealing with the accused device and I was relying on the holding that says you don't have to, you shouldn't be construing a claim term based on an accused device. Where is there such a holding? It's at 1349 in Biotech. What's the language? I don't recall a holding that you have to be utterly ignorant of the accused device or process when you're construing disputed claim terms. I don't agree with that, Your Honor. The fact is Wilson and several other cases that you're supposed to take the accused device so you can get a general understanding what the dispute is. But you're not supposed to then really, what happened is the defendants were worried about how we were going to apply against their system the word price of how their system operates. So then because of the way their system operates they wanted a construction on that. Of course. Every defendant wants a construction that guarantees that he wins and every plaintiff wants a different construction that guarantees that that side wins. This isn't news. The question is are the constructions actually adopted after all the argumentation by the court correct or not? The motive of he who proffered the self-favoring construction is totally irrelevant. Each side wants to win so they proffer a definition by which they win. I agree, Your Honor, but as a point of note the defendants in this case in what we call the closed defendants actually proffered the same claim construction as the plaintiff EPC. So what? I was just pointing out that they thought they could win even with that construction so it's not that we instantly win with our construction. The defendants in the open defendants forced the judge to over construe the term price. Help me with over construe. I'm not sure I'm following you here. It was clear in the specification the word price has a meaning every day. It's the cost of the merchandise. There was no need to then say what is the total at the point of sale. That has nothing to do with the claims and the specification. They were over construing a word that's not even used in the claims. It was the basis. They mean the district judge. The district judge slash by and through the defendants. Yes, the district court judge. Suppose that we conclude that excess, we agree with you that excess means amount in addition to sales price and we also agree with you as to the meaning of sales price. Now does that follow from that that you would win on an infringement suit? We would still have to prove to the jury that the gift card system operates the way we say it does and if we were successful then we would win before the jury. There's not a mutuality here as to infringement then. If you go the other way, the other side wins. If we go your way, you don't win. Is that right? Well, because the claim has several claim elements. We have to prove several claim elements and prove how their system operates to the jury. So I can't guarantee you we win just if you go along with us. I cannot say that. Let me see if I understand what your contention is with respect to this issue of price versus excess. I think I understand with respect to the conventional cards, but let's try a less conventional card. First of all, let's try, suppose I go to the grocery store and sure enough they're offering the cards for free, which they don't offer, but suppose that they decided. The card, no charge, but you have to put at least $100. In fact, you have to put exactly $100. It's a $100 card, which they have. And they will charge me at the register $100 exactly. What's the price of that card? This goes back to what we were doing with the district court judge. In your view, what would you think would be the right construction of the term price as applied to my example? The price of the card would be free and the consumer is loading $100 onto the card for future use. So the price would be zero and the $100 would be loaded onto the card. So it's $100 of excess on top of no dollars of price. Because of the way the card functions. Let me give you a different example and change it a little bit. You know these concepts of you go into a store and you have a shopping spree for some period of time, as much as you can throw into your basket. Suppose that Kids R Us has an offer in which you pay, let's say, $500 for a shopping spree, as much stuff as you can pile into your basket. What's the price of the card that gives you a right to that $500 shopping spree? I pay $500 for the card and I get to throw as much stuff into my basket. Presumably I can get more than $500 into my basket if I really work fast in a half hour period or an hour. What's the price of the card? I'm not sure if I follow. The card is being given by... Yeah, but they give me the card. I pay them $500 at the outset. And then they say, go to it. You've got an hour to put as much stuff in your basket as you can. And if you get more than $500 worth of stuff, good for you. If you get less, good for us. So did you go into Kids R Us and go up to a point of sale? Yeah, and I bought the card. Here's $500. Give me the card. And I'm off to the races. Right. Now when you're using the card, that's all a sale. What is the price, in your view, what application would the word price have in that example? If I go up to a point of sale and I say I want to buy a $500 gift card. Right. If the card has no price associated with it, it's a closed card. It's $500 is the price. They won't give me the card unless I give them $500. That is correct. Right. So is that the price? If they're selling it that way, they say the card is $500. Yeah. But these cards come, the way these cards operate in the defendant's world is you, the card itself has... I'm wondering in the defendant's world, what's the price of the card when I walk up to the register and I hand them $500? What's the price of the card? In your hypothetical, if the card already has a UPC code that says this is $500 and it's preloaded... Yeah. ...and the account already has $500 and you're just giving them $500... Yeah. ...then under your hypothetical, the price would be $500. Even though I can get $700 worth of merchandise for the card. Because of the way they're running their operation. Right. Okay. All right. Thanks. Do you want to save the rest of your rebuttal time? Yes, sir. Yes, Your Honor. Thank you. Mr. Arminio, I believe you're next. May it please the Court. As to the first issue, did the District Court somehow over-construe the matter in dispute? I think the discussion here today proves that the District Court did not. There was a question presented to the District Court with respect to excess cash payment, and that simple question was, in excess of what? What's the baseline? And the District Court, through question and answer with both counsel, tried to understand the difference in their proposed constructions. And that difference was, the baseline that appellees offered was the total amount owed or due at the point of sale. Judge Bryson, just as in your hypothetical, what does it actually take you to pay at the cash register to be able to walk away from that transaction with the card? How much do you have to pay? And we said it's the total amount due at the point of sale. And we cited the claim language to support that from all the seven asserted claims, the specification, and the prosecution history disclaimers. What the appellant provided was, in their construction, this concept of sale price, that it doesn't matter what the consumer pays at the point of sale. It doesn't matter what the consumer thinks they have to pay to walk away from the transaction. It matters, from an accounting perspective, what an accountant might credit in the back office of that merchant as being the sale price or not. So we ended up with a discussion of sale price, but that's an interjected term from the appellant's proposed construction. As appellant made clear, that's not a term in the claims. It's not a term that we asked the district court to construe. We just asked the district court to construe in excess of what? I don't believe the district court overconstrued it. I think under O2 micro, the district court had an obligation to set the baseline. Otherwise, the jury would then be deciding the baseline, and that would be impermissibly letting the jury decide claim scope. So we believe the amount of construction was required by O2 micro. And now if we look at the merits of the construction, as you say, Chief Judge Michel, are the constructions correct? We say, yes, they're correct, and we can see that from a variety of places, including, for example, the different claims that are asserted. The excess cash payment occurs in the 640 patent, but there are other places in the 682 patent claim 30, another asserted claim that the appellant concedes should be construed in the same way. It talks about excess from amounts in the transaction. That similar language is used in the 971 patent claim 20, excess from amounts in the transaction. So here we have, under Phillips, looking at all the claims, the language in the claims themselves, we see that we're talking about more money than you need to complete the transaction, more money than the total amount of money owed or due at the point of sale. That's fully supported by the claim language. It's fully supported by the specification, where it always talks about totaling up and reaching a total amount of money than the consumer, the payer transactor, pays. And then the specification is very clear. If the payer transactor tenders the exact amount of money, then the transaction's over and they can walk away. They have to make a discretionary choice to pay more for there to be any excess. And given that it's a discretionary choice, the baseline for determining excess can never be less than the total amount owed or due at the point of sale. The last thing I would mention is there was a remark that, well, the defendants in what's called the closed card case didn't dispute this claim construction. The fundamental difference between an open card, like American Express's card, is there's a fee. So it's the face value plus a fee. A closed card is similar to Judge Bison's. You outlined the amount of money on the face is the total amount of money. There's no other associated fee. That's it. So we had this dispute in the open card case because the appellants were trying to parse out the fee, typically $595 for a $100 card, from the face value of the card to the $100. And they were trying to say the product and price is $595 and the $100 is the excess, whereas in the closed case they didn't have that parsing problem because there is no fee at all. It's just the face price. I'm confused. I thought the difference between open and closed was that open was like the American Express card, which you could use in any store, and the closed was like Starbucks, which you can only use at Starbucks. Not the question of whether one charged and the other didn't. What you just said suggests a different difference. You are exactly correct, Your Honor. An open card can be used at multiple vendors and a closed card can only be used at the issuing vendor like a Starbucks. A typical feature of all open cards is they have a fee that's associated with it. Which Starbucks has a fee, too. Well, if they do now, it's different than the typical closed card. I can testify to that. It's different than the typical closed card and different than the hypothetical that we discussed. Okay, so you're saying that typically the fee is associated with one vendor. Well, a closed card is trying to promote one vendor, so I assume they don't ordinarily charge a fee. Typically the closed card will not do that. Because they want you to go to Starbucks. Because they want you to go there. All I'm suggesting is whatever the defendants may have decided to dispute or not dispute in the closed card case, different civil action number, different number here on appeal, they didn't have the same kind of issue we had in the open card case and the open card appeal because there the appellant is trying to parse out the fee from the face value. But the flaw in that, in addition to the other claims, the specification, the prosecution history that also talks about the total amount in the transaction, the flaw is the parties agreed to the construction of what a product is. Appellant wants to say it's the price of the product, but we had an agreement regarding what the product is, and it's merchandise, services, rentals, or other valuables. What could be more valuable than money? So even under their construction, even if they want to parse out the face value of the card from the fee, well, the fee is a service, so that would be a product, but the money on the card is valuable, certainly, so that's another product. So it's still, even if they try to parse it a little bit, it's still the total amount owed or due at the point of sale. And the reason I pursued this with the district court is I knew what would happen if we had appellant's construction amount greater than the sale price of the product. We'd end up with an argument in front of the jury where one side would be saying, well, sales price means this, and another side would be saying, sales price means something different, it's a different baseline to calculate excess, and to my mind, that contradicts O2micro because then the jury is deciding what the claims mean, what the baseline to determine excess is, and I think that's inappropriate. What I would mention in terms of the biotech versus biocorp case, that appellant's site, that case actually supports the appellees, not with respect to the term melting, which I agree with the court, really doesn't have any impact because this court just said, well, the district court found the issue with respect to melting was one of claim application, not construction, so it was justified in not constructing. What this court looked at was a substantially water-free homogeneous mixture, and the argument there was, well, do you calculate the percentage of water from the whole mixture, or do you parse out certain parts of the mixture and exclude additives when you're calculating the total water mixture, and this court found as a matter of claim construction and affirmed the district court's claim construction that you calculate the total water based on the whole mixture. So as a matter of claim construction, the district court construed the baseline there. You calculate water as a percentage of the total mixture, and this court affirmed. What we have here is similar. Is it a matter of claim construction to construe the baseline for determining excess amount? I respectfully submit that it is. I respectfully submit that the district court properly addressed the issue, took briefing, took detailed oral argument, took enough question and answer to get the proper context of what was really the nub of the party's dispute, and then issued a construction supported by the other claims, the specification, the prosecution history. And with that, unless the panel has any questions, I would respectfully submit at police would like to see the decision below affirmed, but I know my co-counsel is coming to us by case. Thank you, Mr. Fish. Thank you. Good morning, Your Honors. May it please the court, my name is Alan Fish, and I have the distinct pleasure and honor of representing the collection of gift card companies known as the Closed Gift Card Defendants. I'd like first to identify quickly, if I may, the other lead counsel for those companies that are here today, Mr. Mark Supco on behalf of First Data, Mr. Benjamin Sidbury on behalf of Incom, and Mr. Scott Hornstein on behalf of Value Tech, and I represent independently, SVS, Comdata SVS. I'd like to begin by answering Judge Bryson's questions with respect to the $100 and $500 gift card situation. In the Closed Gift Card model that we're talking about, the answer to Your Honor's question is $100 is the price. That's correct, Your Honor. And with respect to the shopping spree at Kids R Us you identified, from our vantage point as well, the answer is $500. And on that, I think your opposing counsel agrees with you. Correct, Your Honor. And I think this is what really typifies why the construction below is accurate, because there was this open issue that has now been closed by the appropriate construction. The construction that has been talked about here has been amply and adequately addressed by the gentleman from the open gift card defendant. So with that, I will stand and all of my co-defendants will stand on that argument and be happy to answer any specific questions that you may have about the independent brief that we've submitted to this court. You made a waiver argument, which I don't understand. The estoppel issue, Your Honor? Your Honor is addressing the estoppel issue. That was actually submitted by just one of the closed gift card defendants. I am not that individual. I would be happy to defer to that individual and let him speak to Your Honor on that issue. Would Your Honor like to hear from that individual? Well, we've got it in the brief. I think we've got it, yes. It doesn't matter. Anything further? No, Your Honor. Other than we respectfully request that this court, of course, maintain the construction that was presented by the district court. All right, Mr. Coggett, you've got rebuttal for all arguments in all cases, both cases. Thank you, Your Honor. Just to address that waiver issue, I think that was wrongly put. A waiver doesn't occur if a party simply presented new or additional arguments in support of this. We really shouldn't be addressing that rebuttal because it wasn't argued live. We've got the brief versus the brief on that issue. No problem, Your Honor. Another issue, and if this isn't appropriate for rebuttal, it's also in my briefs already. The 191 patent contemplated a direct deposit at the point of sale into the accounts. Thus, the price could have been zero for the items purchased. It was the additional deposit that you could just put in. You could go up to the point of sale and say, I want to put $100 into this predetermined account. So it contemplates the no-sale price or no price that we're talking about today. I just want to make that clear on the record. Well, what are you saying is the price of the $100 closed card? Again, the way the defendant's systems operate, you go into the store, the cards are not active. If you went in and actually stole a closed gift card off the shelf, it would have no value. You'd walk out, and if you came back in and said, here, I have a $100 face value closed gift card. Give me $100 worth of merchandise. The store would say, this card has no value. We haven't loaded it. We haven't put money into it and loaded it at the point of sale to have it. Be active. So it would have no value. Only in the hypothetical, if it already was pre-loaded and pre-designated like the hypothetical we had earlier, then it would have a value. But all the cards on the shelf as the closed cards distribute them, if you went into Starbucks and saw that whole stand and just picked up and ran out with it, they'd be upset because you're running out with their merchandise, quote, the cards, but they have no value until you load them at the point of sale. I don't think, ordinarily you wouldn't withdraw them without loading them, I wouldn't think. Well, you wouldn't take, you wouldn't do that. You would always go into the store and when you're making purchases. I mean, that's the hypothetical. I wasn't thinking of that. I was just trying to show you it had no value until they're loaded. Again, we don't agree that the accused, how the gift card system operates is not the issue in construing the claim terms here. We don't think that's a proper claim construction. And to the extent the court believes that O2 micro requires a word from the specification to be construed due to the application of claim to the accused device, we ask the court to overrule O2 micro to state that only the scope of a disputed claim term needs to be resolved, not whether the claim elements are encompassed in the accused device. All right. We thank all counsel for the briefs and oral argument. The three of you will take the appeal under advisement. Thank you. All rise.